Filed 3/3/25  Marriage of J.M. and M.M. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re Marriage of J.M. and M.M. | 2d Civil No. B333991<br>(Super. Ct. No. D399269)<br>(Ventura County) |
| J.M.,<br><br>    Respondent,<br><br>v.<br><br>M.M.,<br><br>    Appellant. | |

M.M. (husband) appeals an order granting the request of J.M (wife) to permanently renew a domestic violence restraining order (DVRO).  Husband contends: (1) the evidence is insufficient to support the trial court's finding that wife reasonably apprehended the commission of future abuse by husband; (2) husband's abusive communications to wife were protected by the litigation privilege; (3) the court's advancement of a hearing date

without adequate notice to husband violated his due process rights; and (4) the court abused its discretion in refusing to consider husband's allegedly late-filed response to wife's request to permanently renew the DVRO.  We affirm.

*Factual and Procedural Background*

The parties were married in 2011 and separated in 2020.  They have one child, a son, who was born in 2012.  In October 2020 wife filed for dissolution of the marriage.

In September 2021 the trial court issued a DVRO protecting wife and restraining husband.  It was due to expire on September 24, 2023.

After a hearing conducted in April 2023, the trial court "found that [husband had] violated the Restraining Order . . . hundreds of times."  It further found that husband had "directly lied to the Court" while "under oath."

In July 2023 wife filed a request to permanently renew the DVRO.  A hearing on the request was originally set for August 24, 2023.  The hearing was continued to September 29, 2023.  On that date the hearing was continued to January 17, 2024.

On September 30, 2023, wife gave notice to husband that on August 24-25 and September 1 and 29, 2023, a trial had been conducted on various issues relating to the dissolution of the parties' marriage.  The notice stated: "The trial was not completed on September 29, 2023.  The Court ordered the trial to continue to October 19, 2023 . . . .  The Court also scheduled an additional half day on January 17, 2024 . . . ."

The trial was completed on October 19, 2023.  On that date "[t]he Court advanced the hearing set for the renewal of the restraining order requested by [wife] from January 17, 2024 to October 19, 2024."  On October 19, 2024, the court signed and

filed an order permanently renewing the DVRO.  On December 15, 2023, husband timely appealed from the order.

*Statement of Decision*

On February 5, 2024, almost two months after husband had filed his notice of appeal, the trial court filed a 51-page statement of decision.  It covers matters litigated at the five-day trial: the date of separation, the renewal of the DVRO, spousal and child support, the characterization of the parties' property as separate or community, the division of the community property, and discovery sanctions imposed against husband.

In her brief wife relies on the statement of decision's findings as to the DVRO.[1]  Husband argues that, after the trial court had ordered the renewal of the DVRO and the notice of appeal from that order had been filed, the court lacked jurisdiction to issue a statement of decision as to the DVRO.  Therefore, we "should not place any weight on the Statement of Decision in deciding the appeal."

We agree with husband.  "'Generally the filing of a notice of appeal deprives the trial court of jurisdiction of the cause and vests jurisdiction with the appellate court until the reviewing court issues a remittitur.'" (*Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 842.)  Code of Civil Procedure section 916, subdivision (a) provides, "[T]he perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from . . . ."  "The purpose of the automatic stay provision of section 916, subdivision (a) 'is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is

---

[1] Wife filed her brief in propria persona.  Later, on September 3, 2024, she retained counsel to represent her.

3

decided." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189.)

Because the statement of decision must be disregarded insofar as it concerns the renewal of the DVRO, the doctrine of implied findings applies. (*A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1281-1282.) "The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment [or order]." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

*Renewal of DVRO*

Family Code section 6345, subdivision (a) provides that a DVRO "may be renewed, upon the request of a party, either for five or more years, or permanently, at the discretion of the court, without a showing of further abuse since the issuance of the original order." "The legal standard for renewal of a DVRO is whether the protected party entertains a reasonable apprehension of future abuse. [Citation.] '[T]his does not mean the court must find it is more likely than not that abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension genuine and reasonable.' [Citation.] An imminent and present danger of abuse is not required; there must only be a reasonable apprehension that 'abuse will occur at some time in the future if the protective order is allowed to expire." (*Michael M. v. Robin J.* (2023) 92 Cal.App.5th 170, 179 (*Michael M.*).)

"For a DVRO renewal, the protected party need not show a reasonable apprehension of future *physical* abuse. [Citation.] The statute defines 'abuse' broadly to include any behavior that could be enjoined under Family Code section 6320, such as

4

harassing or disturbing the peace of the other party.  (Fam. Code, § 6203, subd. (a) . . . .)"  (*Michael M.*, *supra*, 92 Cal.App.5th at p. 179.)

*Husband Waived Claim that Evidence is Insufficient*
*to Show Wife Reasonably Apprehended Future Abuse*

"'A trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a "reasonable apprehension" of future abuse. . . .'"  (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 510 (*Ashby*).)  Husband claims the evidence is insufficient to support the trial court's express finding that wife had such a reasonable apprehension.

"'"'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.'  [Citations.]"  [Citation.]  The judgment is presumed to be correct.  [Citation.]  And we presume that the record contains evidence to sustain every finding of fact.  [Citation.]  It is the appellant's burden to demonstrate that it does not.  [Citation.]'  [Citation.]  [¶]  'That burden is a heavy one: '"A party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable*, and *show how and why it is insufficient*.  [Citation.]'  [Citation.] . . . 'He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect.'"  [Citation.]'"  (*Ashby, supra*, 68 Cal.App.5th at pp. 511-512.)

5

Husband argues: "[T]he testimony at Trial concerning [wife's] Request to Renew the DVRO was based entirely on [her] subjective belief of the risk of future abuse, was unsupported by any concrete facts and can best be described as benign." "Although there was evidence that [he] had violated the DVRO by abusive communication . . . threatening to 'take this all the way', 'There will be nothing left and I'm okay with that',[] [']Tides will turn', 'you're the boss'…. 'Let's go to court', 'let's litigate'… 'I will appeal' etc. were the only basis for violations of the DVRO that [wife] relied upon in support of her request to Renew the DVRO. The showing made by [wife] that she feared [husband] was incredibly weak and not genuine."

Husband has not carried his burden of summarizing both favorable and unfavorable evidence. He omits to mention substantial material evidence favorable to wife concerning the issuance of the initial DVRO. "In evaluating whether the requesting party [i.e., the party requesting a renewal of the DVRO,] has a reasonable apprehension of future abuse, the trial court ordinarily should consider the evidence and findings on which the initial DVRO was based. [Citation.] '[T]he underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy that test.'" (*Michael M.*, *supra*, 92 Cal.App.5th at p. 180.) "A DVRO renewal may not be denied solely on the ground that no additional abuse has occurred since the issuance of the original DVRO." (*Ibid*.)

Husband does not mention the numerous incidents of his emotional abuse as recounted by wife in support of her February 2021 request for the initial DVRO. For example, wife declared under penalty of perjury: "Around November 17, 2020, [husband] sent me a string of texts that I did not reply to. His 12 comments

6

were typical of what he said to me on an almost daily basis. 'Fuck U', 'You fu[c]king bitch', 'Cunt', 'You ar[e] a fucking cunt', 'I fucking hate you', 'You're a fucking old hag', [']We are selling the house and you can'[t] stop it you cunt', 'you disgust me'. He also sent a photo of another woman stating, 'My shit looks a lot better than your weasel, I fucking hate you.' These texts were all sent when we were trying to mediate our divorce through an attorney-mediator. A true and correct copy of the texts and photos are attached hereto as 'Exhibit 2'."

Wife also declared: "On January 20, 2021, [husband] sent me a screenshot of a photo of our wedding and a broken heart. He has sent this screenshot to me several times. I told him that he was inappropriate and that I would not respond. He then texted me 43 more times mocking me, threatening to sue me, mocking my relationship with my boyfriend, and stating that he will tell [our son] about the infidelity in our marriages. . . . A true and correct copy of the screenshot and the related texts are attached hereto as 'Exhibit 1'."

In February 2021 the trial court issued a temporary restraining order (TRO). On June 29, 2021, wife filed 306 pages of messages sent by the parties to each other through "TalkingParents," a co-parenting communication application. The messages included the following one sent by husband to wife on June 24, 2021: "You are a piece of work. Stop barading [*sic*] our son after he comes home from my place every time. You want to know what fucks him up? Your control and manipulation. [¶] . . . [¶] Your TRO . . . good fucking luck. We're going to blow that TRO up. You know you were [the] violent one. Just fucking wait."

7

"Our power begins and ends with a determination if there was substantial evidence in the winning party's favor. For this reason, [husband] was required to set forth, discuss, and analyze both the favorable and unfavorable evidence. "'Unless this is done the error is deemed to be waived.'". . .'" (*Ashby*, *supra*, 68 Cal.App.5th at p. 513.) Because husband has not set forth or discussed the unfavorable evidence, he has waived his claim that the evidence is insufficient to support the finding that wife had a reasonable apprehension of future abuse.

*The Litigation Privilege Is Inapplicable*

Husband contends, "The alleged *violations of the DVRO* [not his pre-DVRO communications] involved threats of legal action and litigation communications that are absolutely protected by the litigation privilege." (Italics added; bold, capitalization, and underlining omitted.) Therefore, "[t]he Trial court's ruling, to the extent it was based upon [husband's] privileged communications about the [dissolution of marriage] lawsuit should be reversed."

Wife claims husband waived the litigation privilege because he failed to raise it in the trial court. Husband argues that the privilege may be raised for the first time on appeal because the issue involves a pure question of law. (See *Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1139 ["when a defendant raises the litigation privilege for the first time on appeal, the reviewing court may consider it '"when the issue raises a pure question of law"'"].)

"'The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a "publication or broadcast" made as part of a "judicial proceeding" is privileged. . . . "The usual formulation is that the privilege applies to any communication (1)

made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." [Citation.] The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.". . .'" (*Olsen v. Harbison* (2010) 191 Cal.App.4th 325, 333 (*Olsen*).)

The litigation privilege is inapplicable here because husband's abusive communications to wife did not satisfy the third and fourth criteria, i.e., they were not made to achieve the objects of the marital dissolution litigation and did not bear a logical relation to that litigation. (*Olsen*, *supra*, 191 Cal.App.4th at p. 333.) It is reasonable to infer that husband made the communications to harass wife.

Moreover, "application of the litigation privilege in this circumstance would defeat the goal of guaranteeing [wife's] access to the courts by frustrating [her] ability to seek a [renewal of the] protective order . . . . Because [wife's] DVRO [renewal] petition is based in . . . large part on . . . unprotected [communications], application of the privilege would render the DVPA [Domestic Violence Prevention Act] 'significantly or wholly inoperable,' were its enforcement barred in these circumstances." (*Bassi v. Bassi* (2024) 101 Cal.App.5th 1080, 1105 (*Bassi*).) "'[T]he litigation privilege does not bar an action filed under a more specific statute [here the DVPA] when application of the privilege would render the specific provision "significantly or wholly inoperable."'" (*Id*. at p. 1103.)

Husband notes, "'The litigation privilege . . . serves broad goals of guaranteeing access to the judicial process.' [Citation.]" This is true, but "applying the privilege [here] would not serve

9

[that] goal . . . because the DVRO does not limit or constrain [husband's] access to those processes." (*Bassi*, *supra*, 101 Cal.App.5th at p. 1105.) "It does not inhibit [husband's] access to judicial determination of [his] rights with respect to [the marital dissolution litigation], restrain [him] from vigorously pursuing [that litigation], or from directing legitimate litigation related communications . . . to [wife's] counsel or other individuals." (*Id.* at pp. 1104-1105.)

*Alleged Due Process Violation*

A hearing on wife's request to permanently renew the DVRO was set for January 17, 2024. On October 19, 2023, at the end of the fifth and last day of the trial, the court advanced the DVRO hearing to that date and granted wife's request. Husband claims that "advancing . . . the . . . hearing date with no prior notice was a deprivation of [his] due process rights." (Bold, capitalization, and underlining omitted.)

The claim is forfeited because husband failed to object when the trial court said it was advancing the hearing date. (*D.Z. v. L.B.* (2022) 79 Cal.App.5th 625, 632 ["California courts recognize that claims alleging violations of due process rights can be forfeited by failing to raise them in the trial court"].) "'"The purpose of the general doctrine of waiver [and forfeiture] is to encourage a [party] to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . ."'" (*People v. Saunders* (1993) 5 Cal.4th 580, 590.)

Assuming, for purposes of discussion, that husband preserved his due process claim for appellate review, the claim fails because husband was given fair notice that the hearing on the renewal of the DVRO would be an integral part of the trial on the other issues in the marital dissolution litigation. On the

trial's first day – August 24, 2023 – wife testified about why she had requested the initial DVRO and husband's violations of the order. Husband then cross-examined wife. (Husband represented himself at the trial.) In response to a relevance objection, husband asked the court, "I guess this is . . . about the restraining order. I don't know if I can talk about that. Right?" The court responded that husband could cross-examine wife about the order. It said, "[T]he restraining order is on calendar and the renewal of the restraining order in particular. . . . [Wife] has testified why she has a reasonable apprehension of future abuse. She's provided information in that regard. [¶] If you have information that addresses that issue, you can ask her questions that would elicit that testimony." Thus, at trial husband had the opportunity to cross-examine wife about her requested renewal of the DVRO. He availed himself of that opportunity.

On October 19, 2023, immediately before the court advanced the hearing date for the DVRO renewal, husband asked the court, "As far as the DVRO, that was on topic?" The court replied, "That's on for today, yes." Husband did not express concern or surprise at the court's reply. He discussed an issue pertaining to the DVRO and apologized to the court for his past behavior.

*Court's Refusal to Consider Husband's Response*
*to Wife's Request to Permanently Renew DVRO*

On September 18, 2023, after the third day of trial, husband filed a response to wife's request to permanently renew the DVRO. The response was on Form DV-720. Wife objected that the response should have been filed before the trial began. Wife had previously served husband with Form DV-710, a notice

11

of hearing on her request to renew the DVRO. It stated: "At the hearing, the judge can renew the current restraining order for another five years or permanently. *Before the hearing*, you can file a response on Form DV-720." (Italics added.)

Husband filed his Form DV-720 response before the hearing date indicated on Form DV-710. That form notified husband that the hearing would take place on September 29, 2023, 11 days after his response was filed. Wife and the trial court relied on an earlier form DV-710 stating that the hearing would take place on August 24, 2023, but the hearing had been continued to the later date. The court said it would not "consider" husband's response "because we're in the middle of the trial."

Husband contends the trial court abused its discretion in refusing to consider his response. We need not decide this issue. If the court had abused its discretion, husband would not be entitled to a reversal because he failed to carry his burden of showing that its ruling had resulted in a miscarriage of justice. "An appellant bears the burden to show not only that the trial court erred, but also that the error was prejudicial in that it resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475 . . . .) '"[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.". . .'" (*Hoffman Street, LLC v. City of West Hollywood* (2009) 179 Cal.App.4th 754, 772-773.)

12

*Disposition*

The order permanently renewing the DVRO is affirmed. Wife shall recover her costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.

13

Charmaine H. Buehner, Judge

Superior Court County of Ventura

_____


Law Offices of Jon H. Freis and Jon H. Freis, for Appellant.
Jennifer A. Michaels, in propria person; Law Offices of
Masci & Masci and David Masci, for Respondent.